# EXHIBIT A

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

PARK BUILDING, LTD.

    Plaintiff

    vs.

BEAUTY EXPRESS SALONS INC.

    Defendant

No.

COMPLAINT IN CIVIL ACTION

FILED ON BEHALF OF
Plaintiff

COUNSEL OF RECORD OF
THIS PARTY:

Matthew D. Urban, Esquire
PA I.D. #90963
WELTMAN, WEINBERG & REIS CO., L.P.A.
436 Seventh Avenue, Suite 2500
Pittsburgh, PA  15219
(412) 434-7955
WWR#040707037

IN THE COURT OF COMMON PLEAS ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

PARK BUILDING, LTD.

    Plaintiff

vs.                                        Civil Action No.

BEAUTY EXPRESS SALONS INC.

    Defendant

## COMPLAINT AND NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
3rd FLOOR KOPPERS BUILDING,
436 SEVENTH AVENUE,
PITTSBURGH, PA 15219
(412) 261-5555

www.acbalrs.org

## COMPLAINT

1. Plaintiff is an Ohio general partnership with a principal place of business located at 33 N. Third Street, Columbus, Ohio 43215.

2. Defendant is an individual with a last known address of 8357 10th Ave North, Golden Valley, MN 55427.

3. On or about August 14, 2015, a Lease Agreement ("Agreement") was entered into by and between the Plaintiff and Defendant for premises known as 355 Fifth Avenue, Suite 200, Pittsburgh, Pennsylvania 15222. A true and correct copy of the Agreement is attached hereto, marked as Exhibit "A" and made a part hereof.

4. Plaintiff avers that Defendant defaulted under the terms of the Agreement by failing to make payment to Plaintiff as promised.

5. By the terms of the Agreement, Defendant's default made the entire balance of the Agreement immediately due and payable to Plaintiff.

6. Plaintiff avers that at all times material hereto it fulfilled its obligations under the Agreement.

7. The Defendant has failed and refused to repay to the Plaintiff the balance due and owing, which as of October 13, 2020, was $119,378.74 as set forth on the statement of account attached hereto and incorporated herein by reference as Exhibit "B".

8. Although repeatedly requested to do so by Plaintiff, Defendant has willfully failed and/or refused to pay the principal balance or any part thereof to Plaintiff.

WHEREFORE, Plaintiff demands Judgment in its favor and against Defendant, Beauty Express Salons Inc., in the amount of $119,378.74 with interest at the rate of 6% from the date of judgment, plus costs.

WELTMAN, WEINBERG & REIS, CO., L.P.A.

_____
Matthew D. Urban, Esquire
PA I.D. #90963
WELTMAN, WEINBERG & REIS CO., L.P.A.
436 Seventh Avenue, Suite 2500
Pittsburgh, PA  15219
(412) 434-7955
WWR#040707037







# LEASE AGREEMENT

Between

## PARK BUILDING, LTD.

As Lessor, and

## BEAUTY EXPRESS SALONS, INC.

As Lessee


EXHIBIT A

## LEASE AGREEMENT

**1. PARTIES.** This Lease dated _August 14th_, 20_15_ is made by and between PARK BUILDING, LTD., an Ohio Limited Partnership (herein called "Lessor") with offices at 33 North Third Street, Columbus, Ohio 43215, and BEAUTY EXPRESS SALONS, INC. (herein called "Lessee").

**2. PREMISES.** Lessor does hereby lease to Lessee certain space (Premises), known as Suite 200 (as shown on attached Exhibit B and B-1) along with the equipment now located therein (as outlined on Exhibit A) 355 Fifth Avenue, Pittsburgh, PA 15222.

Said Lease is subject to the terms, covenants and conditions herein set forth and the Lessee covenants as a material part of the consideration for this Lease to keep and perform each and all of the said terms, covenants and conditions by it to be kept and performed.

**3. TERM.** The Term of this Lease shall be for five (5) years commencing October 1, 2015 and ending September 30, 2020. It is agreed that this Lease shall continue thereafter from year to year on the same terms and conditions, except that the monthly rent shall be increased by five (5%) per cent over that amount to be paid during the last calendar month of the preceding term, unless either Lessor or Lessee elects to terminate this Lease by delivering written notice to the other not less than one hundred twenty (120) days before the end of any term.

Upon full execution of this Lease Agreement, Lessor shall give Lessee permission to enter the Premises to do any alterations necessary to make the Premises ready for Lessee's business.

**4. RENT.** During the term of this Lease Lessee agrees to pay, in lawful money of the United States, the following rent:

From October 1, 2015 to and including September 30, 2016, $5,000.00 per month
From October 1, 2016 to and including September 30, 2017, $5,100.00 per month
From October 1, 2017 to and including September 30, 2018, $5,304.00 per month
From October 1, 2018 to and including September 30, 2019, $5,516.16 per month
From October 1, 2019 to and including September 30, 2020, $5,736.81 per month

All rent shall be due and payable in advance, on the first day of each and every month.

Payment method:

E Z Pay Plan_____
(initial option)

If Lessee elects to pay their rent and other charges in accordance with the E Z Pay Plan Lessee shall also read and fill out the attached Exhibit. Should the designated account contain insufficient funds to cover the total rent due, a penalty of Twenty-Five Dollars ($25.00) per day will be assessed commencing on the first (1st) day after the automatic transaction was due to take place and daily thereafter until the full amount has been debited from your account.

By Check _____
(initial option)

If Lessee elects to pay their rent and other charges by check, all payments shall be made payable to PARK BUILDING, LTD and mailed to PARK BUILDING, LTD., PO Box 106050, Pittsburgh, PA 15230-6050.

In addition, a penalty will be assessed any rent payment received by Lessor after the fifth day of the month.

All other non-rent payments due to be paid to Lessor (i.e., Electric, Light Tubes, etc.) shall be sent to the address noted above or at such other place as Lessor may from time to time designate in writing.

Said rental shall be adjusted as provided in Article 7.

**5. FINANCE CHARGE.** All unpaid rent and non-rent invoices shall accrue a finance charge per month.

**6. SECURITY DEPOSIT.** Upon execution of this Lease, Lessee shall deposit with Lessor the sum of Five Thousand Seven Hundred Thirty Six and 81/100 Dollars ($5,736.81). Said sum shall be held by Lessor as security for the faithful performance by Lessee of all the terms, covenants, and conditions of this Lease to be kept and performed by Lessee during the term hereof, and may be applied by Lessor, in the event of Lessee's default, to any damage suffered by Lessor as the result of Lessee's default. If Lessor uses, applies or retains all or any part of the security deposit due to a default by Lessee, Lessee will within five (5) days after written demand therefore, deposit sufficient funds with Lessor to restore

the security deposit to its original amount. Provided that Lessee is not in default under any of the terms and conditions of this Lease, and provided also that Lessee shall deliver up the Premises to Lessor at the termination of this Lease in good condition, reasonable wear and tear excepted, then Lessee shall be entitled to the return of the security deposit.

**7. TAXES, INSURANCE AND OPERATING EXPENSES.** During the term of this lease and any renewal term, Lessee shall pay the following monthly estimates as additional rent:

| | |
|---|---|
| Real Estate Taxes: | $247.36 |
| Insurance: | $ 92.76 |
| Operating Expense: | $200.76 |

The monthly estimates shall increase by three (3) percent on January 1 of each calendar year.

**8. USE.** Lessee shall use the Premises for the providing of salon and spa services and shall not use or permit the Premises to be used for any other purpose without the prior written consent of Lessor.

**9. COMPLIANCE WITH LAW.** Lessee shall not use or permit the Premises to be used, for any purpose which will in any way conflict with any law, statute, ordinance, rule or regulation of any duly constituted authority, or which will, in Lessor's opinion, adversely affect the rentability or reputation of the Building.

**10. ALTERATIONS AND ADDITIONS.** Lessee shall not make any alterations, to the Premises or any part thereof without the written consent of Lessor.

**11. REPAIRS**
11a. By taking possession of the Premises, Lessee accepts the Premises as being in good ※ *Subject to list* condition and repair. Lessee shall, at Lessee's sole cost and expense, keep the Premises in good *of items to be* condition and repair, damage from causes beyond the reasonable control of Lessee and ordinary wear *completed.* and tear excepted.

11b. Lessor shall maintain and repair the structural portions of the Building, all common areas of the Building, and the air conditioning, heating and electrical systems installed or furnished by Lessor, unless such maintenance and repairs are caused in part or in whole by the act, neglect, fault or omission of any duty by the Lessee, its agents, employees or invitees.

*Initial*
*Initial*

**12. LIENS.** Lessee shall keep the Premises and the property in which the Premises are located free from any liens arising out of any work performed, materials furnished, or obligations incurred by Lessee.

**13. ASSIGNMENT AND SUBLETTING.** Lessee shall not assign this Lease and shall not sublet the Premises or any part thereof without the written consent of Lessor. It shall be a condition to any consent by Lessor to an assignment or subletting that Lessee shall accompany such request with a certified check in the amount of Two Hundred Dollars ($200.00) to reimburse Lessor for administrative and legal expense for the review and preparation of necessary documents.

**14. TRANSFER OF LESSEES.** This paragraph has been removed in its entirety.

**15. HOLD HARMLESS.** Lessee shall indemnify and hold Lessor harmless against and from any and all costs and/or claims, including attorney fees arising from the enforcement of this Lease, Lessee's use or occupancy of the Premises.

**16. SUBROGATION.** Lessor and Lessee each waive all causes of action and rights of recovery against the other party, its agents, officers, and employees, for any loss or damage occurring to the Premises or the improvements, fixtures, merchandise and personal property of every kind located in or about the premises resulting from any perils covered by insurance, regardless of the cause or origin, including negligence of either party, their agents, officers, and employees to the extent of any recovery of any policy or policies of insurance, provided that the same will not be invalidated in whole or in party by reason hereof. If at any time their respective insurers shall refuse to permit waivers of subrogation, Lessor or Lessee may in each instance revoke said waiver of subrogation effective thirty (30) days from the date of notice, unless within such thirty day period, the other is able to secure and furnish (without additional expenses) insurance in other companies with such waiver of subrogation.

**17. LIABILITY INSURANCE.** Lessee is required to carry its own Commercial General Liability Insurance which will be considered the primary policy in order to protect the Landlord against all liabilities, judgments, costs, damages, and expenses by reason of property damage or personal injury resulting from any matter or thing which might occur on the premises. Lessee shall maintain during the term of this Lease or any extension thereof, in full force and effect, Public Liability Insurance for its own protection and for the protection of Lessor against injuries, accidents or causes of action of every nature and kind whatsoever which are normally covered by "owner-tenant" liability insurance that may arise from the use and occupation of, in and about the Premises, by Lessee. Lessee shall also maintain in full force and effect during the term of this Lease or any extension thereof, Personal Liability Insurance arising from property damage on the Lessee's contents resulting from fire, water or other

damage to the contents and personal property stored or contained on the leased premises. Lessee shall maintain in full force and effect during the term of this Lease or any extension thereof, Business Interruption Insurance covering against loss of earnings and necessary extra expense resulting from interruption of business of the insured caused by damage to or destruction of real or personal property by the perils insured against under this policy. Insurance shall be with limits of not less than one million dollars ($1,000,000.00) inclusive of all injuries or death to persons and damage to property of others arising from any one occurrence and not less than two million dollars ($2,000,000) aggregate. Lessee shall name Lessor as an <u>Additional Insured</u> on its Commercial General Liability Insurance and Property Insurance policies and certificates of such coverages. Such policy or policies shall bear an endorsement to the effect that the insurer shall not cancel or modify the same without at least fifteen (15) days prior written notice to the Lessor. If Lessee shall fail to procure and maintain said insurance, Lessor may, but shall not be required to, procure and maintain same, but at the expense of Lessee. Insurance required hereunder shall be in companies as rated A+, AAA or better in "Best's Insurance Guide". Lessee shall deliver to Lessor prior to occupancy of the Premises copies of policies of liability insurance required herein and certificates evidencing the existence and amounts of such insurance with loss payable clauses satisfactory to Lessor.

**18. SERVICES AND UTILITIES.** Provided that Lessee is not in default hereunder, Lessor agrees to furnish to the Premises during normal business hours on generally recognized business days, as determined by Lessor at his sole discretion, electricity for normal lighting and fractional horsepower office equipment, heat and air conditioning as required in Lessor's judgement. Lessor shall also maintain the elevators and common areas in the Building of which the Premises are a part. Lessee shall not be entitled to any reduction of rent or to damages by reason of Lessor's failure to furnish any of the foregoing when such failure is caused by accident, breakage, repairs, or labor disputes of any character, or by any other cause beyond the reasonable control of Lessor. Lessee shall pay for all utilities consumed or wasted in the Premises.

During the term of this lease and any renewal term, Lessee shall pay the following monthly estimates as additional rent or shall pay the amount invoiced by Lessor as a result of a meter reading:

| | |
|---|---|
| Electricity: | sub-meter and invoiced monthly |
| Heat: | $154.60 |
| Water: | sub-metered and invoiced monthly |

The monthly estimates shall increase by three (3) percent on January 1 of each calendar year.

**19. RULES AND REGULATIONS.** Lessee shall faithfully observe and comply with all rules and regulations that Lessor shall from time to time promulgate and are currently as follows:

A. Lessee agrees that it, its employees, agents, patrons and invitees, will not:
    1. Obstruct sidewalks, entrances, passages, elevators, vestibules, stairways, corridors or halls.
    2. Cover or obstruct windows or doors or place any item or article on window sills or convectors.
    3. Attach or install any sign, notice, or lettering on any part of the Premises or Building, without Lessor's approval.
    4. Bring into or keep in the Building, bicycles or other vehicles, animals or birds of any kind, or permit the use of any part of Premises for cooking or sleeping.
    5. Bring into or keep in the Building any inflammable, combustible or explosive material or do anything which will increase the danger of fire, make void or voidable any insurance on Building, or result in any increased premium for such insurance; or permit any objectionable odors to emanate from Premises.
    6. Disturb or interfere with the other occupants of Building by any means or in any way.
    7. Place additional locks or bolts on doors or windows or change existing locks or bolts or the mechanism thereof.
    8. Advertise in any way which, in Lessor's opinion, tends to impair the reputation of Building or its desirability as an office building.

B. With the exception of a claim that includes Lessors willful misconduct and gross negligence, Lessee shall limit any claim resulting from or in any way attributable to this Lease, or other acts of Lessor, to an amount not to exceed ten percent (10%) of the rent received by Lessor.

**20. HOLDING OVER.** Any holding over after the expiration of the term hereof shall be construed as a tenancy from month to month at a minimum rental of one and one-half (1-1/2) times the monthly minimum rent for the month immediately preceding such holdover, and shall otherwise be on the terms and conditions herein before specified.

**21. ENTRY BY LESSOR.** Lessor shall at any and all times have the right to enter the Premises to inspect the same, perform or supply any services to be provided by Lessor. To submit said Premises to prospective purchasers or tenants, Lessor shall either obtain Lessee's or Lessee's Managers consent or shall submit the Premises to others after normal business hours. Lessor shall at all times have a key to the Premises.

**22. RECONSTRUCTION.** In the event the Premises, or the Building of which the Premises are a part, are damaged by fire or other perils Lessor shall have the option; (1) to repair or restore such damage, this Lease continuing in full force and effect, but the rent to be reduced in proportion to the damage to the Premises, or (2) give notice to Lessee at any time within (60) days after such damage terminating this Lease as of the date specified in such notice, which date shall be no less than thirty (30) and no more than sixty (60) days after the giving of such notice.

**23. DEFAULT.** The occurrence of any one of the following events shall constitute a default and breach of this Lease by Lessee.

23a. The vacating or abandonment of the Premises by Lessee.

23b. The failure by Lessee to pay when due the rent or any other payment.

23c. The failure by Lessee to observe or perform any of the covenants, conditions or provisions of this Lease.

23d. The making by Lessee of any general assignment or general arrangement for the benefit of creditors, or the filing by or against Lessee of a petition to have Lessee adjudged bankrupt, or a petition for reorganization under any law relating to bankruptcy.

**24. REMEDIES IN DEFAULT.** In the event of default by Lessee, Lessor shall give written notice to Lessee outlining said default. Lessee shall then have a cure period of ten (10) days in which to cure any monetary default and thirty (30) days to cure any non-monetary default. Upon the expiration of the cure period, Lessor may:

24a. Enter the Premises, with or without legal process, and again possess and enjoy the same as if this Lease had not been made, and the entire amount of unpaid rent due or thereafter to become due hereunder shall, without further notice or other action on the part of Lessor, accelerate and immediately become due and payable.

24b. Terminate Lessee's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Lessee shall immediately surrender possession of the Premises to Lessor.

24c. Maintain Lessee's right to possession, in which case this Lease shall continue in effect.

**25. EMINENT DOMAIN.** If any portion of the Building of which the Premises are a part shall be taken or appropriated by any public or quasi-public authority under the power of eminent domain, Lessor shall have the right, at its option, to terminate this Lease, and Lessor shall be entitled to any and all income, rent or award of any kind which may be paid or made, and Lessee shall have no claim against Lessor for the value of any unexpired term of this lease.

**26. NOTICES.** All notices to be given by either party to the other hereunder shall be in writing. Notices to the Lessee shall be sent by United States mail, postage prepaid, addressed to the Lessee at the Premises, or to such other place as Lessee may from time to time designate. Notices to the Lessor shall be sent by United States mail, postage prepaid, addressed to the Lessor at Park Building, Ltd., 33 N. Third Street, Suite 500, Columbus, OH 43215-3590, or to such other person or place as the Lessor may from time to time designate.

**27. BROKERS.** Lessee warrants that it has had no dealings with any real estate broker or agents in connection with the negotiation of this Lease and it knows of no other real estate broker or agent who is entitled to a commission in connection with this Lease. The agent representing the owner of the real estate is exclusively representing the owner of the real estate.

**28. WAIVER AS TO LOSS OR DAMAGE.** Lessor shall not be liable for the loss of or damage to any property of Lessee or of others by theft or otherwise, nor for any injury to Lessee, its employees, agents, or invitees.

29. LESSOR'S ALTERATIONS. This paragraph has been deleted in its entirety.

**30. WAIVER OF THE RIGHT TO TRIAL BY JURY.** Lessor and Lessee hereby knowingly and intentionally waive the right to trial by jury in any action or proceeding that Lessor or Lessee may hereinafter institute against each other with respect to any matter arising out of or related to this Lease or the Leased Premises.

**31. SUBORDINATION.** This Lease and any changes or amendments hereto or of any renewals or extensions hereof is subject and subordinate to all underlying Leases and mortgages which may now or hereafter affect Premises or Building. This clause shall be self-operative and no further instrument of subordination need be required by mortgagee. In confirmation of such subordination, Lessee shall, if requested by Lessor, execute promptly an instrument having that effect.

**32. ENTIRE AGREEMENT.** This Lease contains the entire agreement of the parties and no representations or agreements, oral or written, not embodied herein, or incorporated herein by references, shall be of any force or effect.

33. The undersigned hereby authorizes any attorney-at-law to appear in any Court of Record in the State of Ohio or in any other state or territory of the United States after any Guaranteed Obligation becomes due by acceleration or otherwise, to admit the maturity thereof, to waive the issuing and service of process and to confess judgment against the undersigned in favor of any holder of notes pertaining to any Guaranteed Obligation for the amount then appearing due, together with costs of suit, and thereupon to waive all errors and rights of appeal and stay of execution.

34. BANDWIDTH. Lessee ~~shall within thirty (30) days from the execution of this Lease,~~ *shall have the option, at its sole discretion to* satisfy its bandwidth needs through Lessor's building network, as long as the pricing of the above service provided by Lessor is equal to or less than other bandwidth providers. Lessee shall sign a Bandwidth Contract for this service. In the event that it needs additional bandwidth, the same will be promptly provided as outlined in Lessee's Bandwidth Upgrade Agreement with Lessor.

~~Provided that the Lessor has delivered to the Lessee the five (5) Mbps bandwidth as provided herein, and if Lessee does not receive sufficient internet bandwidth from Lessor's system to conduct its business, then~~ Lessee shall have the right, at its own direct cost to contract another Internet Services Provider to install Internet and provide such services to Lessee. Lessor will cooperate fully with Lessee in arranging the installation from the third party provider ~~of the Lessee.~~ *At all times*

35. OPTION TO RENEW. Provided the Lessee is not in default, Lessee shall have the option to renew said Lease for one (1) additional term of five (5) years. In the event the Lessee desires to exercise said option to renew, Lessee shall notify Lessor in writing by no later than one hundred eighty (180) days before the end of the Lease term. Lessor and Lessee shall then have thirty (30) days in which to agree upon the terms and conditions of the extended term. In the event that Lessor and Lessee are unable to agree upon the terms and conditions of the new Lease within said thirty (30) days, this Lease shall terminate pursuant to the Term paragraph in the Lease.

In the event that the parties are unable to agree upon the rent and other terms of the extended term, neither party shall have the right to have a court or other third party set or establish the rent or terms of the extended term.

36. RIGHT OF FIRST REFUSAL. Lessor shall not enter into a Lease for Suite 205 with any party other than Lessee without first offering said Suite to Lessee. In the event that Lessee and Lessor do not agree upon the terms and conditions of a Lease covering Suite 205, within fourteen (14) days after Lessor offers said Suite to Lessee, Lessor shall be free to lease Suite 205 to others. Lessor shall be free to lease Suite 205 to others without offering said Suite to Lessee any time after September 30, 2020.

37. STORE HOURS. Lessee agrees to continuously operate and open the Demised Premises for business at least between the hours of 9:00 a.m. and 5:00 p.m. Monday through Friday of each week during the term of this Lease, and conduct such business with diligence and efficiency so as to produce the maximum gross sales. In the event that Lessee shall be in default of this Article Lessor shall have the right, in addition to other remedies herein provided, at its option, either (i) to collect not only the guaranteed minimum rent and other rents and charges herein reserved, but also additional rent equal to one half (1/2) the guaranteed minimum rent reserved for the period Lessee's failure to do business, computed at a daily rate for each and every day during such period, and/or (ii) to treat such failure to do business as a default under the terms of this Lease.

*Lessor agrees that Lessee at its customers will have acce to space and doors will be open to publ during the following hrs*

38. EQUIPMENT. Lessor owns all furniture, fixtures and equipment (Equipment) currently within the Premises and listed on the attached Exhibit A. Lessee shall have the right to use, but not remove, any Equipment in the Premises. Lessee accepts Equipment in it's as-is condition. If at any time during this Lease term Lessee no longer wants any or all of the Equipment, Lessee will provide written notice to Lessor and Lessor will remove unwanted Equipment.

39. SIGNAGE. Written approval is required from Lessor for any signage to be displayed along the window line of the Premises, along with any sandwich board signage that would be placed on the sidewalk in front of the entrance to the Building.

Lessor shall provide the following signage at no cost to Lessee:
A. Exterior signage on the Building on a 15" x 13" plaque.
B. Lobby signage on directory board.
C. Door signage on Premises door.

*Monday - Friday 9am 9pm*
*Saturday 9am 6pm*
*Sunday 11am 5pm*

*The balance of this page has intentionally been left blank.*

EXHIBIT A

- 2 Pedicure Spa Units
- 1 Wet Dry Table
- 1 Storage Cabinet
- 1 Sauna
- 3 Hair Wash Chairs
- 4 Haircutting stations (2 stations each) with 6 chairs
- 3 Manicure Tables
- 1 Massage Chair
- 1 Massage Bed
- 1 Long Kitchen Table
- 1 Office Desk
- 2 20 inch TVs
- 1 Reception Desk
- 5 Display Shelving Units
- 5 Desk Chairs
- 5 Straight Chairs
- 1 Vaporizor
- 1 Towel Warmer/Sanitizer
- 1 Sofa Table
- 1 Washer/Dryer (stackable)
- 1 Lounge Chair
- 1 Microwave
- 2 Refrigerators
- 2 Pedi Stools
- 1 Futon/Sofa

EXHIBIT B



*WARRANT OF ATTORNEY.* Lessee hereby irrevocably authorizes and empowers the Prothonotary, any attorney or any clerk of any court of record, with or without default, to appear for and confess judgment against Lessee for such sums as are due and/or may become due under this Lease, with or without declaration, with costs of suit, without stay of execution and with an amount, for lien priority purposes, equal to fifteen percent (15%) of the amount of such judgment, but not less than One Thousand Dollars ($1,000.00), added for attorneys' collection fees, with the actual amount of attorneys' fees and costs to be determined. To the extent permitted by law, Lessee releases all errors in such proceedings. If a copy of this Lease, verified by affidavit by or on behalf of the Lessor of this Lease shall have been filed in such action, it shall not be necessary to file the original Lease as a warrant of attorney. The authority and power to appear for and confess judgment against Lessee shall not be exhausted by the initial exercise thereof and may be exercised as often as the Lessor shall find it necessary and desirable and this Lease shall be a sufficient warrant therefore. Lessor may confess one or more judgments in the same or different jurisdictions for all or any part of the amount owing hereunder, without regard to whether judgment has theretofore been confessed on more than one occasion for the same amount. In the event any judgment confessed against Lessee hereunder is stricken or opened upon application by or on Lessee's behalf for any reason, Lessor is hereby authorized and empowered to again appear for and confess judgment against Lessee for any part or all of the amounts owing hereunder, as provided for herein, if doing so will cure any errors or defects in such prior proceedings.

All of the above notwithstanding, Lessor shall provide to Lessee ten (10) days written notice in advance of executing its rights as outlined in this paragraph.

IN TESTIMONY WHEREOF, the parties have executed duplicate counterparts of this Lease.

Signed and acknowledged
in the presence of:

_____
Witness

_____
Witness

LESSOR: PARK BUILDING, LTD.

BY: _____

Signed and acknowledged
in the presence of:

_____
Witness

_____
Witness

LESSEE: BEAUTY EXPRESS SALONS, INC.

BY: _____
Jon Jacobson, Senior Vice President

STATE OF OHIO
SS:
COUNTY OF FRANKLIN

Before me, a Notary Public in and for said County and State, personally appeared the above named _David W. Bishoff_, who acknowledged that he did sign the foregoing instrument, and that the same is his free act and deed for the uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at Columbus, Ohio, this _27th_ day of _August_, 20_15_.

_Joyce R. Shively_
Notary Public

**JOYCE R. SHIVELY**
NOTARY PUBLIC
STATE OF OHIO
PICKAWAY COUNTY
My Comm. Exp.
Sept. 28, 2015

STATE OF _Minnesota_
SS:
COUNTY OF _Hennepin_

Before me, a Notary Public in and for said County and State, personally appeared the above named _Toni Jacobson_ who acknowledged that he/she did sign the foregoing instrument and that the same is his/her free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _Golden Valley_ _Minnesota_ this _19_ day of _August_, 20_15_.

_Elizabeth Clements Sievert_
Notary Public

**ELIZABETH CLEMENTS SIEVERT**
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2020

# EMERGENCY CONTACT INFORMATION

Tenant Name: Beauty Express



Building:
Office Phone:
Office FAX:
E-mail Address:

### PERSONAL CONTACT INFORMATION:

Name: _____

Address: _____

_____

Social Security #: _____

Date of Birth: _____

Home No: _____

Cell No.: _____

E-mail: _____

### EMERGENCY CONTACT:

Name: Dennis Emery

Relationship: Manager

Address: _____

Cell Phone:

Home No: _____

E-mail: _____

---

Please complete this form and return with executed Lease Agreement

## BANDWIDTH UPGRADE

This Bandwidth Upgrade is between PARK BUILDING, LTD. herein after referred to as "Lessor" and BEAUTY EXPRESS SALONS, INC. herein referred to as "Lessee" until such time as Lessor elects in writing to cease from providing the same at which time the monthly cost below shall cease.

Lessee shall pay Lessor a one-time set up fee of $150.00 for Bandwidth upon signing Upgrade. In the event that Lessee's Lease is equal to or longer than twenty-four (24) months prior to any termination rights, the set-up fee for bandwidth shall be reduced to $50.00.

Provided Lessee is not in default, Lessor shall:
- Furnish to the Premises one Cat 6 line, or its equivalent, that will carry five (5) Mbps of bandwidth at a monthly cost of (check choice):

☐ **DEDICATED CIRCUIT SERVICE**

Perfect for the client that wants the safety and security associated with a dedicated service that comes directly off the Building Switch to their suite demarcation.
   $69.00 for 1st Mbps
   $30.00 for 2nd Mbps
   $20.00 for 3rd and all additional Mbps

☐ **SHARED CIRCUIT SERVICE**

Perfect for the client that is satisfied with the shared circuit environment that is currently provided by many the large network carriers along with the possible speed fluctuations inherent with a shared circuit. With a shared circuit, a 10 mbps circuit comes off the Building Switch to a separate switch that allows several clients to share that circuit.

- 10Mbps shared circuit for $69.00 per month

Both Shared and Dedicated services are subject to the following conditions:
- Monthly rates shall increase by 3% on January 1 of every year.
- Lessor may terminate this upgrade by providing thirty (30) days written notice to Customer.

Lessee shall pay those amounts outlined herein throughout the term of its lease with Lessor and indemnify and hold Lessor harmless against and from any and all claims, including attorney fees arising from Lessor's providing and/or Lessee use of said bandwidth service.

Lessor shall not be liable directly or indirectly for any damage or inconvenience caused by the failure, fluctuation, suspension or interruption of said bandwidth. No such loss or damage or inconvenience shall serve to abate or reduce the above payment. In the event that Lessee, or any related party, is ever in default of the above mentioned monthly payment or of any term of the lease covering the Premises that this bandwidth services, Lessor shall have the right to terminate said bandwidth service with or without notice.

Dated as of this _____ day of _____, 20 _____

Witness as to Lessor:                    LESSOR: PARK BUILDING, LTD.

_____          _____

_____


Witness as to Lessee:                    LESSEE: BEAUTY EXPRESS SALONS, INC.

_____          _____

_____

※ Declined at this time. [signature/initial]

| LAWSUIT | | | EVBCO / Forms / lawsuit rent accel. worksheet | |
|---|---|---|---|---|
| Tenant: | Beauty Express | | Date: | 10/13/2020 |
| Address: | 355 Fifth Ave., Suite 200 | | Refundable Deposit Held: | $5,736.81 |
| | Pittsburgh PA 15222 | | Deposit Retained: | 0 |

A/R as of lawsuit paperwork:

**Accelerated Rents:**

| Rent Amt. | # of Mo.s | Total |
|---|---|---|
| $6,023.65 | 11 | $66,260.15 |
| | | $0.00 |
| | | $0.00 |

**Handling Fee**

| $10.00 | 11 | $110.00 |
|---|---|---|

**Credit Score Premium**

| | | $0.00 |
|---|---|---|
| | | $0.00 |
| | | $0.00 |

**Tax**

| $286.75 | 2 | $573.50 |
|---|---|---|
| $295.35 | 9 | $2,658.17 |
| | | $0.00 |

**Insurance**

| $104.53 | 2 | $209.06 |
|---|---|---|
| $107.67 | 9 | $968.99 |
| | | $0.00 |

**Operating Expense**

| $232.73 | 2 | $465.46 |
|---|---|---|
| $239.71 | 9 | $2,157.41 |
| | | $0.00 |

**Electric**

| | | $0.00 |
|---|---|---|
| $0.00 | | $0.00 |
| $0.00 | | $0.00 |

**Bandwidth**

| | | $0.00 |
|---|---|---|



EXHIBIT B

Water

|  |  | $0.00 |
| --- | --- | --- |
| $0.00 |  | $0.00 |
| $0.00 |  | $0.00 |

gas

| $174.01 | 2 | $348.02 |
| --- | --- | --- |
| $179.23 | 9 | $1,613.07 |
|  |  | $0.00 |

Steam

|  | $0.00 |
| --- | --- |
| $0.00 | $0.00 |
| $0.00 | $0.00 |

HVAC (contract and/or mo. pymt)
$0.00

| $75,363.84 | TOTAL ACCEL. RENT |
| --- | --- |
| $49,751.71 | A/R prior to accel. of rent |
| $125,115.55 | GRAND TOTAL |
| $5,736.81 | less deposit held |
| $119,378.74 | Adjusted Total |

## VERIFICATION

The undersigned does hereby verify subject to the penalties of 18 PA. C.S. §4904 relating to unsworn falsifications to authorities, that he/she is __David W. Bishoff__,
(Name)

__Admin Member__ of __Park Building Ltd__, Plaintiff herein, that he/she is duly
(Title)              (Company)

authorized to make this Verification, and that the facts set forth in the foregoing Complaint are true and correct to the best of his/her knowledge, information and belief.

_____
(Signature)

Date __11/16/20__

WWR# 040707037

V35 Rev 11/2017