**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PARK BUILDING, LTD,<br><br>Plaintiff,<br><br>v.<br><br>BEAUTY EXPRESS SALONS INC.<br><br>Defendant. | Case No. 2:21-cv-00033-JFC<br><br>District Judge Joy Flowers Conti |
| BEAUTY EXPRESS SALONS INC.<br><br>Counter-Plaintiff,<br><br>v.<br><br>PARK BUILDING, LTD,<br><br>Counter-Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**BEAUTY EXPRESS SALON INC.'S MOTION TO COMPEL**

Defendant/Counter-Plaintiff Beauty Express Salons Inc. ("Beauty Express"), by and through its undersigned counsel, hereby files this Memorandum of Law in Support of it Motion to Compel against Plaintiff/Counter-Defendant Park Building, Ltd. ("Park Building").

## I. INTRODUCTION

This case involves a lease between Beauty Express as lessee and Park Building as lessor for a beauty salon and spa in Downtown Pittsburgh. At its core, this case exemplifies the unfair conduct of a landlord during an unforeseeable global emergency. After years of charging a fictitious rate for utilities at the leased premises, Park Building filed a complaint against Beauty Express seeking, *inter alia*, damages for rent that was not paid during periods in which Beauty Express was unable to access or use the leased premises. In response, Beauty Express filed its counterclaims, seeking damages relating to the fraudulent rates charged by Park Building.

The discovery issue before this Court involves Beauty Express's efforts to obtain information relating to the computation of the utility rates that it was charged. As discussed below, the Court should grant the Beauty Express's motion to compel (the "Motion") and require Park Building to provide the requested information that is relevant to Beauty Express's counterclaims.

## II. FACTUAL BACKGROUND

### A. The parties entered into a lease agreement that expired in September 2020.

On or about August 14, 2015, Beauty Express and Park Building entered into a Lease Agreement ("Lease") regarding certain space known as Suite 200 located at 355 Fifth Avenue, Pittsburgh, Pennsylvania 15222 (the "Premises"). *See* Answer, Affirmative Defenses and Counterclaims of Defendant/Counter-Plaintiff Beauty Express Salons Inc., ECF No. 10, at p. 5, ¶ 7. The Lease had a five-year term commencing on October 1, 2015 and ending on September 30, 2020. *Id*. at p. 6, ¶ 8. From approximately October 1, 2015 until March 16, 2020, Beauty Express operated a beauty salon and spa at the Premises. *Id*. at ¶ 9. Due to governmental restrictions and concerns associated with the COVID-19 pandemic, Beauty Express was unable to use the Premises from March 17, 2020 through June 4, 2020 and intermittently from June 2020 through September 2020. Beauty Express vacated the Premises on September 26, 2020. *Id*. at ¶ 10.

### B. Park Building refused to provide documentation to support its utility charges to Beauty Express.

Pursuant to the Lease, Beauty Express was required to pay for "all utilities consumed or wasted in the Premises." *Id*. at ¶ 12. With respect to electricity and water, Park Building was required to invoice Beauty Express monthly for the costs of these utilities as measured at their respective submeters for the Premises. *Id*. at ¶ 13. Instead of providing monthly invoices demonstrating the costs for electricity and water as measured at their respective submeters for the

Premises, Park Building provided a statement that charged a fee based off of an "E.V. Bishoff Company rate" ("EVBCO Rate"). *Id.* at ¶ 14. These utility charges were never explained or justified.

In or around February 2019, upon noticing inconsistencies and irregularities in its utility bills, Brian Luborsky, President and CEO of Beauty Express, began requesting Park Building to provide documentation to support its utility charges. *Id.* at ¶ 15. Despite such requests, Park Building refused to provide any such statements or documentation even though it stated that it regularly took photographs of the sub-meters each month to ensure that costs were evenly distributed among the building's tenants. *Id.* at p. 7, ¶ 16.

Beauty Express contends that the EVBCO Rate was not a true reflection of the actual cost of utility consumption for the Premises but instead represented the cost of the utilities plus an additional and unnecessary surcharge that was not permitted by the Lease. For example, from March 17 through June 4, 2020, the Premises was locked down and Beauty Express was unable to access or use the Premises due to governmental restrictions and concerns associated with the COVID-19 pandemic. *Id.* at ¶ 23. Despite this fact, Park Building charged Beauty Express $409.60 for water service from April 6, 2020 through May 1, 2020 based on the EVBCO Rate. *Id.* at p. 8, ¶ 24. When Beauty Express inquired into this charge, David Bishoff, the president and owner of Park Building, stated that the water charge of $409.60 "logically cant [sic] be right if there were no people in the Premises and not [sic] hair cutting taking place." *Id.* at ¶ 25. Park Building then charged Beauty Express $205.20 for water service from May 1, 2020 to June 4, 2020 based on the EVBCO Rate even though the Premises was closed during the month of May 2020 as well. *Id.* at ¶ 26. Additionally, after Beauty Express vacated the Premises on September 26, 2020, Park Building charged it $758.00 for water service from October 1, 2020 through November 2, 2020 based on the EVBCO Rate. *Id.* at ¶ 27.

## III. PROCEDURAL AND DISCOVERY HISTORY

In December 2020, Park Building filed the underlying action claiming that Beauty Express was in breach of the Lease. The action was subsequently removed to this Court. *See* ECF No. 1. Park Building asserts that Beauty Express failed to make certain payments under the Lease and owes $119,328.74 in unpaid rent, utilities, and late fees, including a full year's worth of rent after the Lease expired in September 2020.

In response, Beauty Express filed its Answer, New Matter, and Counterclaims, asserting counterclaims for fraud, reckless misrepresentation, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and a demand for an accounting of the actual costs of the utilities consumed on the Premises. *See* ECF No. 10. Beauty Express's claims relate directly to its contention that Park Building failed to invoice Beauty Express the actual cost of the monthly utilities and, instead, used the fictious EVBCO Rate to improperly inflate Beauty Express's utility bills. Discovery is scheduled to be completed by February 28, 2022. *See* ECF No. 28.

### A. Beauty Express served written discovery requests that sought discovery of information relevant to its counterclaims.

On August 19, 2021, Beauty Express served its First Set of Requests for Production of Documents ("First RFPs"), a true and correct copy of which is attached hereto as Exhibit A. Request No. 10 sought Park Building's public utility invoices: "All statements or invoices that Park Building received for natural gas/heat, electricity, and water for the Building from October 1, 2015 to the present." On September 17, 2021, without providing any specific objections or responses, Park Building produced over 200 pages of documents that it represented to be responsive to Beauty Express's First RFPs.

Further, on October 15, 2021, Beauty Express served its First Set of Requests for Admission (the "RFAs") on Park Building. At issue here are Request Nos. 1-4:

> REQUEST FOR ADMISSION NO. 1: Admit that the E.V. Bishoff Company Rate was different than the rate that Park Building was charged by the relevant public utility for electric for the Building.
>
> REQUEST FOR ADMISSION NO. 2: Admit that the E.V. Bishoff Company Rate was different than the rate that Park Building was charged by the relevant public utility for water for the Building.
>
> REQUEST FOR ADMISSION NO. 3: Admit that the E.V. Bishoff Company Rate was different than the rate that Park Building paid to the relevant public utility for electric for the Building.
>
> REQUEST FOR ADMISSION NO. 4: Admit that the E.V. Bishoff Company Rate was different than the rate that Park Building paid to the relevant public utility for water for the Building.

RFAs, a true and correct copy of which are attached hereto as Exhibit B.

Finally, and to better clarify its request for specific utility bills, Beauty Express also served the following Second Set of Requests for Production of Documents ("Second RFPs") on Park Building on October 15, 2021:

> 1. As they relate to the Building, all documents that refer or relate to the rates charged to Park Building for electric and water from October 1, 2015 to September 30, 2020, including, but not limited to, all electric and water public utility invoices sent to Park Building from its public utility providers and any communications regarding same.
>
> 2. All documents that refer or relate to the calculation of the E.V. Bishoff Company Rate that was utilized to determine the amount Beauty Express was charged for electric and water services for the Lease Premises.

Second RFPs, true and correct copies of which are attached hereto as Exhibit C.

**B. After several attempts by Beauty Express to meet and confer on these issues, Park Building has refused to produce the requested documents.**

After reviewing Park Building's first production of documents, Beauty Express notified Park Building that its production was deficient. *See* October 27, 2021 letter from Jared S. Hawk, a true and correct copy of which is attached hereto as Exhibit D, at 2.

On November 4, 2021, Park Building responded to Beauty Express's October 27, 2021 correspondence with supplemental documents and responses, objecting to any production of documents responsive to Beauty Express's Request No. 10. *See* November 4, 2021 Response, a true and correct copy of which is attached hereto as Exhibit E.

Further, on November 10, 2021, Park Building provided its responses to Beauty Express's RFAs and Second RFPs. With respect to Beauty Express's requests pertaining to the utility bills and rates, Park Building objected that Beauty Express's requests were "irrelevant" and refused to respond further. *See* November 10, 2021 Response, a true and correct copy of which is attached hereto as Exhibit F.

On November 16, 2021, the parties met and conferred regarding several discovery issues, including Beauty Express's request for Park Building's utility bills. Park Building agreed to speak with one of its employees to determine the availability of "the periodic invoices (be it monthly or otherwise) Park Building was charged by the utility companies and Park Building's utility rate as it relates to those invoices." *See* November 17, 2021 e-mail from Matthew Pomy, a true and correct copy of which is attached hereto as Exhibit G.

Beginning on December 3, 2021, Park Building produced additional supplemental responses and documents to Beauty Express's discovery requests. *See* December 3-8, 2021 Responses, a true and correct copy of which is attached hereto as Exhibit H. Notably, such supplemental production did not include the utility invoices Park Building accrued over the course of the Lease. Beauty Express raised this production deficiency with Park Building on December 21, 2021. *See* December 21, 2021 e-mail from John A. Marty, a true and correct copy of which is attached hereto as Exhibit I. In response, Park Building offered to provide utility bills related to a certain subset of time or "provide one statement from each year (*i.e.*, all September invoices from 2015-2020)." *See* December 22, 2021 e-mail from Matthew Pomy, a true and correct copy of

which is attached hereto as Exhibit J. Explaining that a limited set of the utility bills is insufficient – and in a final attempt to resolve this dispute – Beauty Express engaged in further communication. *See* December 30, 2021 e-mail from John A. Marty, a true and correct copy of which is attached hereto as Exhibit K. To date, Park Building has refused to provide the requested information and, as a result, Beauty Express now requests this Court's intervention.

## IV. ARGUMENT

### A. The legal standards for motions to compel favor granting the Motion.

"A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosures or discovery of the materials sought." *Sears v. Mooney*, No. 1:17-cv-00050, 2018 WL 1783170, at *2 (M.D. Pa. April 13, 2018). The movant bears the burden of proving the relevance of the information it seeks to compel. *See id.* Federal Rule of Civil Procedure 26(b)(1) provides the following broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

If the movant establishes the relevance of the requested information or documents, the burden shifts to the opposing party who must demonstrate why the information sought is not discoverable. *See id.* Put another way, the burden is on the objecting party to demonstrate in specific terms why a discovery request is improper. *See Hicks v. Big Brothers/Big Sisters of America*, 168 F.R.D. 528, 529 (E.D. Pa. 1996). The party objecting must show that the requested materials do not fall "within the broad scope of relevance ... or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor

of broad disclosure...." *Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987).

The purpose of requests for admission is to expedite the trial by establishing certain material facts as true, thus reducing the number of issues for trial." *Guinan v. A.I. duPont Hosp. for Children*, No. 08-228, 2008 WL 938874 at *1 (E.D. Pa. Apr. 7, 2008) (citations omitted). Rule 36 is not a discovery device, but rather "a procedure for obtaining admissions for the record of facts already known." *Ghaxerian v. The United States of America*, No. 89-8900, 1991 WL 30746, at * 2 (E.D. Pa. Mar. 5, 1991). "Once a party has answered or objected to an RFA, the requesting party may seek a judicial determination of the sufficiency of the answers and/or the propriety of any objections." *Tomaszewski v. Allstate Ins. Co.*, 19-CV-0080, 2021 WL 1238894, at *2 (E.D. Pa. Apr. 2, 2021) (citing U*nited States v. Lorenzo*, CIV. A. No. 89–6933, 1990 WL 83388 (E.D. Pa. Jun. 14, 1990)). In evaluating the sufficiency of the answers or objections, a court should consider: (1) whether the denial fairly meets the substance of the RFA; (2) whether good faith requires that the denial be qualified; and (3) whether any "qualification" which has been supplied is a good faith qualification. *Id.*

**B. The documents sought by Beauty Express are directly relevant to its counterclaims.**

At their core, Beauty Express's counterclaims are based on the fact that Park Building improperly charged Beauty Express fraudulent rates for its water and electric utilities, as opposed to directly passing on its own costs to Beauty Express. In its discovery responses, Park Building has admitted that it did not simply pass on the costs of the utilities that it was charged for the building. Instead, it admitted that David Bishoff, President of Park Building, created the fictious EVBCO Rate that included inflated charges unrelated to the consumption of electricity or water as measured by the relevant sub-meter:

> David Bishoff set the rate at which utilities are billed in the subject leased premises a number of years ago in light of the ever changing rates from public utility companies. The rate was designed to be comparable to the local public utility rates for similar usage levels and includes generation of electric/water, the cost of transportation of the utility, the municipal taxes associated with the utilities, and the cost of installing and maintaining the sub-meters to allow for the measurement of the individual unit. Administrative costs associated with sending Park Building personnel to read the sub-meter as well as to prepare the associated invoices are included. The rate also contemplates the inevitable float and even non-payment of utility invoices from tenants…

*See* Ex. H, at Response to Interrogatory No. 1 of Second Set of Interrogatories and Supplemental Response to Interrogatory No. 1 of First Set of Interrogatories. In order for Beauty Express to compute the damages for its counterclaims, it must gain an understanding of the rates that Park Building paid for its water and electrical utilities so that such rates can be compared against the EVBCO Rate that was charged to Beauty Express. Therefore, the documents sought by Beauty Express are undeniably relevant to its counterclaims and are important in resolving the issues before the Court. As a result, the Motion should be granted.

**C. The documents sought by Beauty Express are in the exclusive custody and/or control of Park Building.**

In addition to being relevant to Beauty Express's counterclaims, the requested documents are also in the exclusive custody or control of Park Building. As Park Building's counsel explained, Park Building either has the requested documents in its possession or can obtain them from its public utility suppliers. *See* Ex. J. Park Building has even indicated that it would be able to obtain invoices from September 2015, the earliest date requested by Beauty Express. *Id*. Although Park Building suggested that it should only provide utility invoices for one month per year for the five-year term of the Lease (*see id.*), such a suggestion makes little sense because Park Building has admitted that public utility rates and costs can be "ever changing." *See* Ex. H.

Beauty Express is requesting approximately 120 documents (one electrical bill and one water bill for each month over the five-year term of the Lease), that Park Building either possesses

or is able to easily obtain from its public utility provider at no cost. Additionally, to the extent that Park Building is concerned about its account numbers being included in such documents, it can either redact them or produce them pursuant to a mutually-agreed upon protective order.

Simply put, the requested documents are relevant to Beauty Express's counterclaims, proportional to the needs of the case, and are in the exclusive possession and control of Park Building. As a result, the Motion should be granted.

### D. Park Building's objections to Beauty Express's Requests for Admission are insufficient and should be overruled.

Similarly, Park Building's objections to Beauty Express's Request for Admission Nos. 1-4 are insufficient. Notably, Park Building has refused to answer these requests for admission based solely on its objection that they are irrelevant. As discussed above, information related to the rates paid by Park Building for electric and water are central to Beauty Express's counterclaims. As a result, the Motion should be granted and Park Building should be ordered to admit or deny Beauty Express's Request for Admission Nos. 1-4.

## V. CONCLUSION

For the foregoing reasons, Beauty Express respectfully requests that the Court grant the Motion, enter an order in the form of the proposed order attached hereto, and order Park Building to (i) to produce every invoice that shows the rates that it paid for water and electricity for the building from October 2015 through September 2020 and (ii) either admit or deny Beauty Express's Request for Admission Nos. 1-4.

Date: January 14, 2022

Respectfully submitted,

/s/ John A. Marty
Jared S. Hawk
Pa. I.D. No. 92959
jared.hawk@saul.com
John A. Marty
Pa. I.D. No. 324405
john.marty@saul.com
Saul Ewing Arnstein & Lehr LLP
One PPG Place, Suite 3010
Pittsburgh, PA 15222
Telephone: (412) 209-2500
Facsimile: (412) 209-2539

*Counsel for Defendant/Counter-Plaintiff Beauty Express Salons Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Pennsylvania by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ John A. Marty
John A. Marty